Timothy CHANEY, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 24334.

Missouri Court of Appeals,
Southern District,
Division One.

March 29, 2002.

Motion for Rehearing and Transfer Denied
April 18, 2002.

Application for Transfer Denied
May 28, 2002.

Nancy L. Vincent, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

SHRUM, Presiding Judge.

Timothy Chaney ("Movant") appeals a judgment denying his Rule 29.15 motion for post-conviction relief from his conviction for murder in the first degree.[1] We affirm.

Movant was convicted by a jury of killing M.W. ("Victim"), a girl who was three weeks away from her thirteenth birthday. The trial judge sentenced him to death in accordance with the jury's recommendation. The conviction was affirmed by the Supreme Court of Missouri in *State v. Chaney*, 967 S.W.2d 47 (Mo.banc 1998). It set aside the death sentence, however, and ordered the trial court to resentence Movant to life imprisonment without eligibility for probation, parole, or release. *Id.* at 49.

The facts in Movant's criminal trial include the following recitation. Victim spent the afternoon of April 8, 1995, with Movant's stepdaughter. Much of their afternoon visit occurred in Movant's home. About 4:50 p.m., Victim and Movant's stepdaughter left Movant's home going in different directions. Victim never returned home, and her body was found on April 14, 1995, in Stone County, Missouri. An autopsy revealed Victim had suffered several blows to her head and four stab wounds to the chest area. At the time of the autopsy, scrapings were taken from beneath Victim's fingernails. Neither the State nor defense counsel, however, had those materials tested to determine if they contained DNA and, if so, whose DNA it might be. The State's evidence did include testimony from a forensic analyst about her observations of trace materials

1. All rules references are to Supreme Court Rules (2001) unless otherwise indicated.

recovered from Victim's clothing and from Movant's van. As she was being cross-examined, this witness testified that the trace materials were a "highly unique collection of particles[,]" and "[e]xamination of the vacuumings from the back of [Movant's] van produced identical pieces of material." *Chaney*, 967 S.W.2d at 51, 53. Moreover, this expert testified "the likelihood that [the] collection of particles [on Victim's clothing] could come from anywhere other than [Movant's] van was 'astronomical.'" 967 S.W.2d at 53. This and other circumstantial evidence recounted in 967 S.W.2d 47 led to Movant's conviction.

Movant filed his pro se Rule 29.15 post-conviction motion on July 20, 1998. Counsel was appointed and an amended motion and request for evidentiary hearing were filed on October 20, 1998. The amended motion contained 145 pages and alleged twenty instances of ineffective assistance of counsel.

In November 1998, the State asked the motion court to deny some of Movant's claims without evidentiary hearing, and this request was sustained in part. Movant then filed multiple requests that the motion court reconsider its dismissal of these claims. However, all such requests were denied.

On November 27, 2000, the motion court held an evidentiary hearing at which evidence was adduced for Movant and on behalf of the State. The evidence included the deposition testimony of Movant's trial lawyers. After the hearing, the trial court made findings of fact and conclusions of law addressing all of Movant's allegations, including those dismissed without evidentiary hearing. The court then entered judgment denying Movant's request for post-conviction relief. This appeal followed.

■ Appellate review of a motion court's disposition of a Rule 29.15 motion is limited to deciding "whether the findings and conclusions of the [motion] court are clearly erroneous." Rule 29.15(k). A motion court's findings and conclusions are clearly erroneous only if a full review of the record leaves the appellate court with a definite and firm impression that a mistake has been made. *Franklin v. State*, 24 S.W.3d 686, 689 (Mo.banc 2000) *cert. denied*, 531 U.S. 951, 121 S.Ct. 356, 148 L.Ed.2d 286.

■ To prevail on a claim of ineffective assistance of counsel, a movant must show: First, that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances; and second, counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). Prejudice under the *Strickland* analysis is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

Movant's first point relied on maintains the motion court clearly erred when it dismissed, without evidentiary hearing, that part of Movant's motion which alleged his lawyers were ineffective for not conducting DNA testing on scrapings taken from under Victim's fingernails. Movant notes the motion court, in dismissing this claim, found it was "inadequately pleaded, that favorable results from the DNA testing would not have provided a defense, and that counsel had a reasonable trial strategy[ ]" when they opted not to have DNA testing done. Movant challenges each of these findings, however, as clearly erroneous. In particular, Movant insists that any strategy by defense counsel that did not

include DNA testing of these materials "was clearly unreasonable."

At the evidentiary hearing on Movant's 29.15 motion, depositions by Movant's trial lawyers were introduced into evidence. Each lawyer testified as to why he did not request DNA testing. Attorney Sherwood explained:

"Well, of course, there is a risk in it. The state was not relying on it, apparently didn't test it for purposes of determining whether [Movant's] DNA was there. I wasn't sure whether frankly we should take that chance. Suppose we did do that and it was determined that yeah, there's evidence there that's incriminating, we have not done our client much help. There is that risk in spite of the fact your client tells you he didn't do it, clients have been known to be less than candid with their lawyers."

Attorney Bender testified as follows:

"Well, I am not sure that it would have been helpful. There was no indication that the victim had struggled with her assailant. There is no, there was nothing I could tell from the reports, the records or autopsy that she had gouged the assailant or that his DNA would be under her fingernails so, you—if his DNA is not in the material under her fingernails what does it prove and what if you had it examined and it turns out that his DNA was there. There is very little to gain and just because it wouldn't really prove anything."

Based on the above, the trial court concluded that "counsels' actions were controlled by a reasonable trial strategy."

We do not find the motion court's finding to be clearly erroneous. Defense counsel in a criminal case have a duty to make a reasonable investigation or to make a reasonable decision that a particular investigation is unnecessary. *Childress v. State*, 778 S.W.2d 3, 6[7] (Mo.App.1989).

A decision to forego an investigation or testing must be evaluated for reasonableness under the circumstances, and all the while giving great deference to counsel's judgment. *Id.* at 6[8]. Likewise, the decision to call a witness, if that witness will not unqualifiedly support the defense, is a matter of trial strategy and will not support a finding that counsel was ineffective. *State v. Johnson*, 901 S.W.2d 60, 63 (Mo. banc 1995). "Strategic choices made after a thorough investigation are virtually unchallengeable." *State v. Bransford*, 920 S.W.2d 937, 948[18] (Mo.App.1996). As noted in *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065:

"It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (Citations omitted.)

Based on the *Strickland* standard, when reviewing a Rule 29.15 case, "we indulge in a strong presumption that defense counsel's conduct falls within the wide range of reasonable professional assistance." *Bright v. State*, 4 S.W.3d 568, 569[1] (Mo.App.1999). "Our 'scrutiny of counsel's performance must be highly deferential,' and the strong presumption serves to eliminate the 'distorting effects of hindsight.'" *Id.* (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct at 2065).

Applying these principles, we find the motion court did not err when it found

the decision by Movant's lawyers to forego DNA testing of the scrapings taken from the victim's fingernails was reasonable trial strategy. From their testimony, we discern that Movant's lawyers weighed the pros and cons of doing the DNA testing and decided not to run the risk that it might entail. The conscious decision and assessment made by these trial lawyers, i.e., the risk of finding Movant's DNA under Victim's fingernails outweighed the benefit of finding its absence, was reasonable within prevailing professional norms under the circumstances of the case.

In so finding, we have not ignored Movant's contrary arguments. For instance, Movant claims attorney Bender's asserted belief that there was no proof of struggle was "clearly belied by the medical examiner's testimony." Specifically, Movant points to Dr. Spindler's at-trial testimony that "same age, recent bruises ... on [the victim's] shin region" suggested to him "a struggle of some sort[ ]" had occurred before the victim died. By focusing on this and Bender's "no struggle" comment, Movant contends that "[n]o *reasonable* trial strategy can be premised upon [attorney Bender's] incorrect recollection of the state's evidence." (Emphasis supplied.) The problem with this argument is that it misconceives the time period to which Bender was testifying.

In arguing that Bender had "incorrect recollections," Movant only mentions Dr. Spindler's at-trial testimony in which he opined there had been "a struggle of some type." The record however, does not show that attorneys Bender and Sherwood knew *before trial* that Dr. Spindler held this opinion. To the contrary, attorney Bender's testimony, when considered in its entirety, suggests otherwise. Specifically, Bender explained his "no-struggle" comment by saying, "there was nothing I could tell from the reports, the records or

autopsy that she had gouged the assailant or that his DNA would be under her fingernails." Such testimony provides a time context and shows Bender was referring to a pre-trial period when he and his co-counsel were deciding what evidence and witnesses to use at trial. We are confirmed in this view upon reading the autopsy report and noting the absence of any opinion by Dr. Spindler that the victim struggled with her assailant. Movant's argument that the motion court's "reasonable strategy" finding was erroneous because of attorney Bender's "incorrect recollections," has no merit.

Movant also argues the motion court clearly erred because its "reasonable strategy" finding on the DNA testing issue was rooted in trial counsels' belief that Movant lied to them about his involvement. According to Movant, in providing effective assistance of counsel, a lawyer "has the duty to discover everything, including his client's veracity." Movant's argument continues as follows:

"Here, given the evidence and information available to trial counsel, trial counsel's assumption that [Movant] lied about his innocence was unreasonable. The evidence indicated a struggle and trial counsel should have noticed that there was no evidence that [Movant] showed outward signs of such a struggle (scratches, bruises, etc.). Given those facts, coupled with [Movant's] consistent denials of involvement and the telling lack of direct evidence linking him to [the victim's] death, it was far more reasonable to pursue that angle by showing that whatever was underneath [Victim's] fingernails, it wasn't [Movant's] DNA. Instead, without investigating, trial counsel assumed [Movant] was lying, with no evidence presented from which one could assume he was lying. Counsel 'lacked the information

to make an informed judgment,' and for that reason 'any argument as to trial strategy is inappropriate.' "

 This argument fails for multiple reasons. First, there is no evidence Movant's lawyers "assumed" he was lying when professing his innocence. Attorney Sherwood's testimony simply shows he considered the *possibility* Movant lied about his innocence as Sherwood considered whether to test or not test the fingernail scrapings. Weighing that possibility was certainly reasonable within prevailing professional norms. Second, when deciding if a criminal defense lawyer rendered effective assistance, courts are precluded from doing what Movant urges, that is, second-guess the lawyer's strategy decision and decide, via hindsight, whether one strategy was "more reasonable" than the other. Third, Movant's argument yields no clue on what investigation his lawyers should have made to convince them of Movant's veracity to the point they could safely risk doing the DNA testing. Nor can this court imagine how that might have been accomplished. The argument is baseless. The motion court's findings and conclusions that Movant's lawyers' decision not to do DNA testing was reasonable trial strategy is not clearly erroneous. Point denied.[2]

Movant's second point charges the motion court clearly erred by not finding his lawyers ineffective for failing to ask the court to strike the forensic analyst's statement that the likelihood the particles on Victim's clothing came from anywhere other than Movant's van was "astronomical." Movant also claims the motion court clearly erred when it refused to find his appellate counsel ineffective for not raising the issue as plain error in his direct appeal.[3]

To analyze this point requires an understanding of the context in which the "astronomical" remark was made, and trial counsels' asserted reasons for not challenging the remark. As indicated earlier, Victim's clothing was examined for trace evidence. The examiner, Jenny Smith ("Jenny"),[4] found at least eleven separate items of a unique nature.[5] *See Chaney*, 967 S.W.2d at 51. One item found on Victim, "vinyl like rubber," was "indistinguishable in every measurable respect" from a mat taken from Movant's van. Also indistinguishable were paint chips from Movant's van and that found on Victim's clothing. Paint chips from Movant's tool box were also compared to items found on Victim. These were likewise "not

2. Because the motion court's "reasonable trial strategy" finding is a tenable basis for affirming the motion court's denial of Movant's claim that his lawyers were ineffective for not doing DNA testing, we do not address Movant's complaints about other findings, i.e., that Movant had not adequately pleaded the claim or that DNA testing would not provide a defense.

3. - As it did with Movant's Point I claim, the motion court initially entered an interlocutory order denying Movant's Point II claims without an evidentiary hearing. When an evidentiary hearing was held on Movant's other claims, however, evidence was adduced relating to his Point II claims. The motion court relied on that evidence in its final order denying Movant's Rule 29.15 motion and our review is undertaken in that context.

4. In this opinion we refer to forensic expert Jenny Smith as "Jenny" without intending disrespect. We have done so because Movant's expert was named Stephanie Smith. Because both experts have the same last name, we use their first names in this opinion.

5. Victim's clothes were examined for "foreign" materials. Victim's body was found in a wooded area; therefore, anything not expected to originate from that area would be considered foreign. Of course, this would exclude items such as hair from the Victim.

distinguishable in any measurable respect." The back of Movant's van was "vacuumed," and the evidence gathered from this was compared to the foreign items found on Victim's clothing. This comparison "produced identical pieces of material." *Id.* Jenny testified that Victim would have had to have been lying down in the back of the van to pick up the amount of material that was found on her clothing.[6] *Id.* at 51–52.

Movant's trial counsel first tried to counter Jenny's testimony about the presence of these trace materials through cross-examination by showing weaknesses therein. For instance, counsel got Jenny to admit it was possible to carry all eleven items into the house from various sources including the van and Movant's business.[7] After defense counsel suggested that Victim could have picked up the unique items while she was visiting Movant's stepdaughter in the house, Jenny admitted this was a possibility if there was a large pool of the items in the home. Jenny further admitted that in investigating crime scenes, the collector of evidence should attempt to get all "possible" evidence the first time. She also admitted this was not done as the van was not searched for "standards" until months after Victim's murder. When defense counsel started cross-examining Jenny about the possibility that the trace materials got on Victim's clothing while she was in Movant's home, the following occurred:

"Q. [to witness Jenny Smith:] You did not consider in your analysis whether [Victim] was in the Chaney home or not; is that true?

"A. I considered it, yes.

"Q. And how did you consider whether or not [Victim] was in the Chaney home?

"A. I considered it unlikely that this debris ended up on her clothing from the Chaney home.

"Q. And what did you base that on?

"A. This is a highly unique collection of particles, these's so many of them. The likelihood that you would find this pool anywhere else but here is so unlikely its astronomical."

■■■ With the "astronomical" comment set in this context, attorney Sherwood testified it was speculative, at best, that the trial judge would have sustained an objection and stricken the comment; that he was concerned the trial judge would have "said, now this is cross-examination and I will allow it, thereby heightening the effect" of Jenny's remark. In summary, Sherwood said he did not object because he did not want to emphasize the comment to the jury. Attorney Bender gave similar reasons for not objecting to the comment. In part, he testified:

"[W]hen you're trying a case things happen pretty fast. And *you cannot unring a bell* and the obvious dispute between [Jenny and Stephanie] was not whether or not there was a proof of an association between [Movant's] van and [Victim]. The real issue was whether or not—the association was because [Victim] had been in the home the same day she disappeared and so you would expect the association. In terms of that particular statement where she was qualified as an expert, you know, she testified she had never found this many items of association before basically and

---

6. Jenny based her testimony on the uniqueness of the particles and the unlikely possibility that eleven "points of association" would be acquired from a source other than Movant's van.

7. Among the unique trace materials collected were metal shavings. These were consistent materials with items originating from Movant's business.

my expert concluded, yeah, this is a lot of items of association, *none of that is inconsistent with our theory. . . . There was no guarantee that the judge would have sustained an objection,* whether he should have or shouldn't have, *sometimes judges don't sustain an objection and so now it just makes it look like your instruction accentuates her statement.*

"Basically, all she was saying was that she found a lot of things on the victim that were in the van and she also testified on cross that she would not be surprised to find any of those items that were in the van to also find them in the home. . . . *This trace evidence is merely evidence of an association and doesn't have much meaning at all where there is legitimate contact. So, you know, you would almost expect the evidence to be astronomical that there was some association because she was in [Movant's] home.*" (Emphasis supplied.)

Based on the foregoing, the motion court found that trial counsel was not ineffective for failing to ask the trial judge to strike Jenny's "astronomical" remark. Specifically, the motion court found that counsels' decision was reasonable trial strategy, as explained by both trial attorneys, and also non-prejudicial. Those findings and conclusions are not clearly erroneous.

█ In many proceedings, seasoned trial counsel, as we have here, do not object to otherwise improper questions or arguments for strategic purposes. *State v. Tokar,* 918 S.W.2d 753, 768 (Mo.banc 1996). "It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good." *Id.* If a failure to object to a statement is based on reasonable trial strategy, then no ineffective assistance of counsel can be shown. *State v. Simmons,* 955 S.W.2d 729, 746[42] (Mo.

banc 1997). Movant has failed to show that his trial counsel's decision not to request that the "astronomical" remark be stricken was anything other than reasonable trial strategy.

Our view in this regard is confirmed by what happened after defense counsel decided not to object to the "astronomical" comment and risk emphasizing it, but opted instead to try to defuse the comment via cross-examination and the testimony of his expert. For instance, immediately after Jenny made the remark, defense counsel elicited from her additional testimony which would have allowed the jury to conclude she had a penchant for exaggeration.

"Q: [I]n your deposition you said there were over two million items in the van that you could have examined; is that correct?

"A: Did I say two million?

"Q: You did.

"A: Oh, well that was probably a gross exaggeration as far as fact. I found many, many items that I couldn't characterize."

Next, defense counsel got Jenny to admit the same trace evidence could have been located in the house, but since it was never searched near the time of the crime, then there was no way to definitively know. They also elicited an admission from Jenny that her "astronomical" comment had no scientific basis, i.e., there were no studies conducted which would support her conclusion. Also detracting from the impact of the astronomical comment was the testimony of Stephanie. She stated it was necessary to rule out the home as a possible source of the trace evidence because the particles found were very mobile. Like Jenny, Stephanie testified it was likely these particles would be found in Movant's home, and there was no limit on the amount of items that could be transferred.

Fairly summarized, Stephanie's testimony indicated that Jenny was simply wrong in her astronomical assertion, and she further stated the "value of this [trace] evidence is extremely limited."

When defense counsel opted not to ask that Jenny's comment be stricken, they presumably knew what their expert's testimony would be and knew of Jenny's exaggeration in her deposition. Their demonstrated effort to minimize Jenny's testimony without emphasizing it persuades us their decision fell within the wide range of professional assistance. We reject Movant's argument to the contrary.

■■■ A final allegation under this point is that the motion court erred when it did not find Movant's appellate counsel ineffective for failing to raise this issue on direct appeal. In Movant's first amended motion, he argued appellate counsel was ineffective because counsel did not raise the possibility that it was plain error for failure to strike Jenny's astronomical comment. Movant framed the argument as follows:

> "[N]owhere in the argument that the *evidence was insufficient* to convict [Movant] of first degree murder, is there any reference to Smith's statistical probability of similar evidence pools, nor is it argued that this statement *cannot be considered in determining the sufficiency of the evidence.*" (Emphasis supplied.)

Movant fails to realize this type of argument would not have been cognizable on direct appeal as part of his challenge to the *sufficiency of the evidence. See State v. Butler,* 24 S.W.3d 21 (Mo.App.2000). Appellate counsel cannot be held ineffective for the failure to engage in a futile act. *Honeycutt v. State,* 54 S.W.3d 633, 651 (Mo.App.2001). Point II is denied.

The motion court's findings of fact and conclusions of law are not clearly erroneous. We are not left with a definite and firm impression a mistake was made. The judgment of the motion court is affirmed.

MONTGOMERY, J., and BARNEY, C.J., concur.