

# Missouri Court of Appeals

## Southern District

In Division

COURTNEY DUANE BLADE, )
)
Appellant, )   No. SD38089
)
v. )   **Filed: March 4, 2024**
)
STATE OF MISSOURI, )
)
Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable David C. Jones, Judge

**AFFIRMED**

Courtney Duane Blade appeals the denial of his amended Rule 29.15 motion for post-conviction relief, following an evidentiary hearing.[1]  In a single point, Blade argues his trial counsel was ineffective in "failing to object to the prosecutor's improper cross-examination of [Blade] during which the prosecutor asked [Blade] about the veracity of another witness[.]"  Finding no merit in Blade's point, we affirm.

### Background[2]

Blade was convicted of first-degree assault, armed criminal action, and misdemeanor stealing, following a jury trial.[3]  Before trial, Victim died and was, therefore, unable to testify.  At

---

[1] All rule references are to Missouri Court Rules (2019).

[2] Portions of this section are taken from our unpublished Order and Statement in ***State v. Blade***, SD36071 (July 20, 2020), without further attribution.

[3] §§ 565.050, RSMo Supp. 2017; 571.015, RSMo 2000; and 570.030, RSMo Supp. 2017.

trial, the State called Victim's brother, Blade's girlfriend ("Girlfriend"), a police officer, an emergency room physician who treated Victim, a detective assigned to the case, and a surgeon who evaluated Victim. Blade's evidence included his own testimony. The following evidence, viewed in the light most favorable to the verdict, was presented.

Blade and Victim, who were both homeless, met through a mutual acquaintance, Girlfriend, at a local homeless shelter. In May 2017, Girlfriend and Blade spent time together at the shelter, and Girlfriend told Blade she felt like Victim was "hitting on [her.]" Blade became upset and struck Girlfriend in the face with his hand. Girlfriend then followed Blade until they located Victim at a homeless campsite.

Girlfriend testified Blade approached Victim with a metal pole or pipe that was approximately 12-inches long. Girlfriend closed her eyes because she did not want to see what Blade was going to do. She then heard Victim screaming in pain for about five minutes. Afterwards, Blade forced Victim to remove all of his clothing because Blade wanted to humiliate Victim. Girlfriend left the campsite with Blade after the assault.

Later that same evening, officers responded to a call regarding a naked man who was on the sidewalk waving for help. Officers located Victim and took him to the emergency room, where he complained of pain in his lower back, left hip, right forearm, left knee, left wrist, and left hip. Victim told the emergency room physician he had been hit multiple times with a metal pipe. The emergency room physician testified Victim's injuries were consistent with being hit by a pipe. Victim's trauma surgeon also testified Victim told him "he was struck with a metal pipe by another individual."

Blade testified in his own defense at trial. Blade did not dispute that he struck Victim, but claimed to have done so with his fists rather than a metal pole or pipe. According to Blade, Girlfriend told him Victim had drugged her with methamphetamines and had sexually assaulted

2

her.[4]  Blade testified he confronted Victim about what he did to Girlfriend, which Victim denied. This made Blade angry, and Blade claimed he then punched Victim four or five times.[5]  Blade testified he took Victim's clothes because he wanted to humiliate Victim for what he did to Girlfriend.

During cross-examination of Blade, the State asked Blade about whether he believed Girlfriend when she claimed Victim had sexually assaulted her:

Q.     *You spent, I'm guessing, a pretty good deal of time with her during that six months to a year relationship?*

A.     *Yes.*

Q.     *And knew her pretty well probably from that?*

A.     *Yes.*

Q.     *When she told you whatever it was that she told you about [Victim] early -- or late morning, early afternoon of May 17th, you believed what she was telling you; is that right?*

A.     *Yes, absolutely.*

Q.     *And if I understand what you're telling this jury, you believe what she told you enough that then you went and committed an assault later that night.  Is that a fair statement?*

A.     *Yes.  She was upset about it.*

Q.     *So you had no reason not to believe [Girlfriend] when she told you something?*

A.     *I had no reason not to.*

Q.     *You knew [Girlfriend] to be honest?*

A.     *Yes.*

Q.     *You knew her to tell the truth?*

---

[4] Girlfriend, in contrast, initially denied telling Blade that Victim had assaulted her or had sexual contact with her, but said that she wasn't certain that she didn't say anything to Blade about Victim "taking advantage of her."

[5] The physician testified that Victim's injuries were not consistent with being hit by a fist, but instead more likely occurred as the result of Victim raising his arm to protect himself from a direct blow from something similar to a nightstick or a baton.

*A. Yes.*

*Q. And so you didn't hesitate for a second to believe what she told you?*

*A. She was so upset. No one would fake the way she was -- how upset she was. No one could.*

*Q. And she had given you no reason to disbelieve her?*

*A. At that point in time, no.*

*Q. You knew that her word in this -- when she's telling you about things, her word is good?*

*A. Yes.*

Trial counsel did not object. During closing arguments, the State emphasized Girlfriend's credibility. Trial counsel argued Blade's testimony was more credible than Girlfriend's and reminded the jury why Blade was mad at Victim:

> [Blade] talked about why he was mad. He was mad about the drugs. He was mad because [Girlfriend] had led him to believe there was some sort of sexual assault on her. That's why he was mad. He was consistent about it then and consistent about it now.

Following deliberations, the jury found Blade not guilty of robbery in the first degree, but guilty of the lesser included offense of misdemeanor stealing. The jury also found him guilty of first-degree assault, and armed criminal action. Blade was sentenced to 20 years' imprisonment for the first-degree assault, three years' imprisonment for the armed criminal action, and one year in jail for misdemeanor stealing, with the sentences to run concurrently.

## Post-conviction Relief Proceeding

Blade filed a direct appeal challenging his convictions. We issued an unpublished opinion affirming Blade's convictions. Following the issuance of our mandate, Blade timely filed *pro se* and amended motions for post-conviction relief.[6] Blade's amended motion alleged,

---

[6] We have independently verified the timeliness of Blade's post-conviction motions. *See **Moore v. State**, 458 S.W.3d 822, 825-26 (Mo. banc 2015); **Dorris v. State**, 360 S.W.3d 260, 268 (Mo. banc 2012).

4

among other things, that trial counsel was ineffective in failing to object to the State's cross-examination of Blade about Girlfriend's veracity.

An evidentiary hearing was held, at which trial counsel, as well as other witnesses, including the prosecutor, testified. Trial counsel testified he did not object to the State's cross-examination of Blade regarding Victim's veracity because he wanted the jury to believe what Victim had told Blade:

> As to the line of questioning, again, our theory of defense was that, whether or not [Victim]had actually been sexually assaulted, she -- we believed that she had told [Blade] that she had been sexually assaulted and he acted upon that belief that he did believe she was sexually assaulted. We wanted the jury to believe he believed she was sexually assaulted. I thought it might be confusing to the jury if I was to object on a question of whether or not he believed her when she told him [she] was sexually assaulted -- or he believed her.

The prosecutor testified:

> [Blade] was asserting a defense essentially that he had been told by [Girlfriend] that she had been sexually assaulted by [Victim] and was using that as an excuse for his assault on [Victim]. So whether or not she -- it was a test, in a way, of his credibility. If he had reason to doubt -- excuse me. If he had reason to doubt [Girlfriend], then it would greatly erode any defense of justification that he was trying to put forward. And then we ultimately ended up litigating rather heavily the sudden passion cause issues in terms of lesser included instructions.[7] My memory is that we knew that those were coming well in advance of the time the instructions were submitted; so it was also likely to begin setting up an attack on those elements, should the [c]ourt have granted those instructions.

The motion court denied Blade's amended motion, finding, among other things, that Blade's testimony about believing Girlfriend was "the cornerstone of [his] claim that he was acting out of sudden passion[.]" It further found trial counsel's decision was a reasonable trial strategy because trial counsel wanted to inject the issue of sudden passion and an objection would have "undermined the entire fabric of his defense."

## Standard of Review

"This Court reviews a post-conviction relief motion for whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Hosier v. State*, 593 S.W.3d 75,

---

[7] Trial counsel submitted two jury instructions based on sudden passion.

5

81 (Mo. banc 2019) (quoting **Forrest v. State**, 290 S.W.3d 704, 708 (Mo. banc 2009). A motion court's findings and conclusions are clearly erroneous if this Court is left with the definite and firm impression that a mistake has been made. **McFadden v. State**, 619 S.W.3d 434, 445 (Mo. banc 2020). We defer to the motion court's credibility findings. **Hecker v. State**, 677 S.W.3d 507, 511 (Mo. banc 2023).

## Legal Principles

To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that: (1) his or her counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would in a similar situation (performance prong), and (2) the movant was prejudiced by that failure (prejudice prong). **Strickland v. Washington**, 466 U.S. 668, 687 (1984). "If the movant fails to satisfy either the performance or the prejudice prong of the test, then we need not consider the other[,] and his claim of ineffective assistance of counsel must fail." **Anderson v. State**, 66 S.W.3d 770, 775 (Mo. App. W.D. 2002).

To demonstrate trial counsel's performance was ineffective, a movant must overcome the strong presumption that trial counsel's conduct was reasonable and effective. **Hosier**, 593 S.W.3d at 81. "To overcome this presumption, a movant must identify specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." **Id.** (quoting **Davis**, 486 S.W.3d at 906). "Reasonable trial strategy decisions cannot form the basis of an ineffective assistance of counsel claim." **Hays v. State**, 484 S.W.3d 121, 132 (Mo. App. W.D. 2015) (quoting **Griffith v. State**, 233 S.W.3d 774, 778 (Mo. App. E.D. 2007)). "It is not ineffective assistance of counsel to pursue one reasonable trial strategy to the exclusion of another reasonable trial strategy." **Anderson v. State**, 196 S.W.3d 28, 33 (Mo. banc 2006). "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." **Id.** "In many instances, seasoned trial counsel do not object to otherwise improper questions or arguments

6

for strategic purposes." ***Hosier***, 593 S.W.3d at 92 (quoting ***State v. Clay***, 975 S.W.2d 121, 135 (Mo. banc 1998)).

## Discussion

"In order to prevail on a claim of ineffective assistance of counsel for failure to object to evidence, [Blade] bears the burden of proving, among other things, that the failure to object was not strategic and was prejudicial." ***Tucker v. State***, 633 S.W.3d 539, 542 (Mo. App. S.D. 2021). Blade does neither.

First, even assuming, without deciding, that the State's cross-examination of Blade about Girlfriend's veracity was objectionable, trial counsel articulated a reasonable trial strategy for not objecting—he wanted the jury to believe that Blade punched Victim because Blade believed Victim had sexually assaulted Girlfriend. This strategy was reasonable because it supported his sudden-passion defense.[8] Blade claimed to have punched Victim because he was mad that Victim had drugged and sexually assaulted Girlfriend. Blade didn't deny assaulting Victim, but sought to justify his actions. The State's examination of Blade highlighted Blade's subjective belief and explained why he did what he did. An objection to the State's line of questioning would have been contrary to trial counsel's strategy and a "failure of counsel to undermine his own trial strategy does not render counsel's assistance deficient." ***Dent v. State***, 662 S.W.3d 792, 799 (Mo. App. E.D. 2023). While perhaps not a perfect defense, it certainly was a reasonable one, given that Blade did not deny the assault. If Blade truly believed Victim had sexually assaulted Girlfriend, testimony about that belief would offer the jury some explanation for why Blade attacked Victim. "If a failure to object to a statement is based on reasonable trial strategy, then no ineffective assistance of counsel can be shown." ***Chaney v. State***, 73 S.W.3d 843, 851 (Mo. App. S.D. 2002).

---

[8] "Sudden passion" is "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation[.]" § 565.002 (15).

Second, Blade was not prejudiced by trial counsel's failure to object to the State's cross-examination of Blade about Girlfriend's veracity. Again, Blade did not dispute he assaulted Victim. Rather, he claimed he punched Victim as opposed to striking him with a metal pipe, and did so to avenge Girlfriend. Accordingly, there was no real dispute as to whether Blade was the perpetrator and only a dispute as to how the injuries were inflicted and whether any defense applied. However, the evidence that Victim's injuries were the result of being struck by a metal pipe as opposed to being struck by fists was overwhelming. Both Victim's emergency room physician and the surgeon who consulted with Victim testified Victim told them he had been struck with a metal pipe. The emergency room physician who treated Victim testified Victim's injuries were consistent with being struck by an object and not fists. Even if trial counsel had objected to the State's line of questioning about Girlfriend's veracity and even if that objection had been sustained, Blade has failed to demonstrate a reasonable probability that the outcome of the trial would have been different, given the overwhelming evidence. *See **Fowler v. State***, 624 S.W.3d 430, 436 (Mo. App. E.D. 2021) (finding no prejudice resulting from trial counsel's failure to object in light of overwhelming evidence of movant's guilt).

The motion court did not clearly err in denying Blade's amended motion for post-conviction relief. Blade's point is denied.

## Conclusion

The motion court's denial of Blade's Rule 29.15 amended motion for post-conviction relief is affirmed.


MARY W. SHEFFIELD, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

JEFFREY W. BATES, J. – CONCURS