**Michael S. VICORY, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

No. 24612.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 12, 2002.

Kent Denzel, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Judge.

Michael S. Vicory ("Movant") appeals from the denial of his Rule 29.15[1] motion for post-conviction relief. On appeal, Movant alleges that the motion court clearly erred in denying his claims that his trial counsel was ineffective for failing to object to the introduction of evidence of Movant's reputation for violence and of specific acts of violence, and for failing to adequately object to the State's closing argument.

On June 27, 1998, Movant shot and killed his brother, Mitch Vicory ("Mitch"), with a black powder pistol that Movant kept at his house for target practice. Movant and Mitch had been drinking together the previous day at Movant's home, and Mitch had become belligerent and used profanity in the presence of Movant's grandchildren. Around 10 p.m. on June 26, 1998, Movant locked Mitch out of Movant's house. For approximately two hours after he was locked out of the house, Mitch banged on the doors and windows and threatened to kill everyone inside.

The next morning, Movant went outside and found Mitch sitting on the front porch. Once again, Movant and Mitch drank beer and argued. Eventually, Movant went inside, locking the door, which agitated Mitch and he began threatening Movant. Movant retrieved a pistol from his bedroom with the intention of firing a warning shot. He then walked into the kitchen and yelled out the kitchen window for Mitch to leave. Although Movant could hear Mitch walking on the gravel near the house, he could not see him. As Movant was attempting to pull the hammer of the gun back, the gun discharged, and Movant heard Mitch say, "You shot me." Movant claimed that he had intended to shoot toward an old pickup truck and away from where Mitch might be located.

---

1. All rule references are to Missouri Rules of Criminal Procedure (2002).

Movant was charged with one count of second-degree murder in violation of Section 565.021.1.[2] Following a jury trial, Movant was found guilty of voluntary manslaughter, and was sentenced to fifteen years imprisonment. His conviction was affirmed on appeal in June 2000. Movant then filed a Rule 29.15 motion for post-conviction relief, which was later amended. The motion court denied relief following an evidentiary hearing. Movant appeals.

■ In reviewing the denial of a Rule 29.15 motion, an appellate court is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Moss v. State,* 10 S.W.3d 508, 511 (Mo. banc 2000). The findings and conclusions of the motion court are clearly erroneous only if, after review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Moss,* 10 S.W.3d at 511.

■ A criminal defendant seeking post-conviction relief based on ineffective assistance of counsel must demonstrate that his counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under substantially similar circumstances, and that he was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *Milner v. State,* 968 S.W.2d 229, 230 (Mo.App. S.D.1998). Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. There is a strong presumption that counsel's performance con-

stituted sound trial strategy. *Cardona–Rivera v. State,* 33 S.W.3d 625, 628 (Mo. App. S.D.2000).

■ In his first point on appeal, Movant contends that the motion court clearly erred in denying his claim that his trial counsel was ineffective for failing to object to the State's introduction of evidence of his reputation for violence and of specific acts of violence. He argues that he did not place his "character in issue by eliciting evidence of acts of violence by Mitch because this evidence was offered to show [Movant's] state of mind and explain why he got out his gun, not to support a defense of self-defense by eliciting evidence that Mitch was the aggressor."

At trial, during Movant's direct examination, Movant testified that Mitch had a "violent nature when he drank." Movant stated that alcohol affected Mitch "like no one [he had] ever seen in [his] life, he just became obsessed with brutality and violence." Movant described a Thanksgiving where Mitch drank whiskey, became belligerent, and chased Movant with a knife. Another time, Mitch smashed a gun on the ground, bending the barrel. Movant also stated that about three weeks prior to the shooting, Mitch had become intoxicated, taken some tools from a bucket, and described how seriously he could injure someone with them. Movant testified that Mitch had a history of "pulling guns and knives and hatchets and stuff like that and chasing [Movant] with them."

During cross-examination, the State then asked Movant:

Q. It's also true that you told how Mitch had a reputation and was violent and abusive, is that correct?

A. Yes.

---

**2.** All statutory references are to RSMo 2000, unless otherwise indicated.

Q. Is it also true that you have a reputation—

BY [MOVANT'S TRIAL COUNSEL]: Your Honor, may we approach the bench?

(Counsel approached the bench and the following proceedings were had:)

BY [MOVANT'S TRIAL COUNSEL]: Your Honor, I object to the State attempting to put [Movant's] reputation in through his own testimony. I can't ask him if he's a good guy, the State can certainly impeach his character, but it has to be by reputation and testimony offered by third parties. If he's got some third parties that want to say his reputation is bad that's fine, but I object to him specifically introducing his reputation by his own testimony. Further I know where this is leading and I know he's then going to try to impeach him with specific acts of bad conduct.

. . .

BY THE COURT: If I'm tracking the State hasn't asked that yet.

Following this exchange, the trial court concluded that the State could impeach Movant's "general reputation," but stated, "I would hate to see us go any further than that." When the proceedings returned to open court, the State asked Movant if he had a reputation for being violent, assaultive, and abusive, and he denied having such a reputation. Movant's trial counsel did not make any further objections during this line of questioning. The State then requested another bench conference. This discussion followed:

[BY THE STATE:] I think I could get into some specific assaults.

BY THE COURT: Yeah, I'll let you ask.

[BY MOVANT'S TRIAL COUNSEL]: He's admitted that he has had some domestic quarrels with his wife.

BY THE COURT: I think there's a limit beyond which [the State] could go, but I think because he has denied and hedged on that issue that he's entitled to ask about specific acts which may refresh his memory.

[BY MOVANT'S TRIAL COUNSEL]: Okay.

The proceedings then returned to open court, and the State questioned Movant on whether he had on several different occasions (a) kicked his wife in the eye, (b) knocked his wife down, (c) threatened to kill her, (d) went crazy and pulled a gun on his wife and the children, (e) gone crazy one night, hurt his wife and tore up the house, and (f) sent his stepdaughter to the hospital after striking her in the face. Again, Movant's trial counsel did not object to this line of questioning.

In regard to Movant's claim, the motion court found:

Movant's counsel opened the door to questions concerning [M]ovant's reputation for violence and specific acts of violence from the past when he inquired about [Mitch's] history for violence. Movant claimed [Mitch's] history of violence caused him to act in self defense. His own history of specific acts of violence was relevant on that issue and inquiry about specific acts of violence was permitted only after [M]ovant denied any history of violence.

"[I]t is well settled in the law that when the accused raises the issue of the victim's reputation for violence, he also raises his own." *State v. Gilpin*, 954 S.W.2d 570, 576 (Mo.App. W.D.1997). As stated in *State v. Schlup*, 785 S.W.2d 796, 801 (Mo.App. W.D.1990):

When a defendant elects to testify in his own defense, he may be cross-examined in detail as to any matter generally referred to in his direct examination.

Thus, a defendant cannot complain about the state's inquiring about matters first brought into the case by the defendant.

Where an accused tenders the factual issue of bad character of the victim to substantiate his plea of self-defense, he thereby extends the scope of the inquiry beyond the res gestae and opens up for inquiry all evidence of like quality having probative value on the merits of said ultimate factual issue. Where the defendant places the victim's reputation as a violent and turbulent man before the jury, he also places his own. (Citations omitted.)

*See also State v. Oates,* 12 S.W.3d 307, 313 (Mo. banc 2000), which held that because the defendant offered direct evidence of the victim's bad acts to support his self-defense theory, he could not complain when his character was subjected to the same scrutiny.

Movant, in his brief, acknowledges the admissibility of this type of evidence, but claims that his theory at trial was not premised upon self-defense. The record shows, however, that the defense's theory at trial was based, at least in part, upon self-defense. During closing argument, Movant's trial counsel argued that this was a case of accident, but that if the jury did not believe it was an accident, then the jury still had to consider whether Movant's actions were "reasonable and that he acted in self-defense." The jury was also told in Instruction No. 6 that "[o]ne of the issues in this case is whether the use of force by [Movant] against [Mitch] was in self-defense."

Additionally, at the evidentiary hearing on the motion for post-conviction relief, Movant's trial counsel explained that the Movant's defense was a combination of self-defense and accident, and that "in an accident defense the jury has to find that the defendant was acting lawfully. And the only way [Movant] could have been acting lawfully was if he took the gun out in self defense." Movant's trial counsel further stated:

I sit there and say this is not a self defense case, it's an accident case. The truth of the matter it was a self defense case, because our evidence on whether or not that gun would accidentally discharge was, unfortunately, very weak. And I felt that I was going to have difficulty selling the jury on the fact that it just went off accidentally. I was trying to get the idea—try somehow to get the idea across that what he was going to do was he was going to fire a warning shot and somehow he did it—what was going to be the warning shot wound up being the fatal shot.

Here, Movant's defense theory was clearly based in part on self-defense. Therefore, when Movant injected the issue of Mitch's character into the case by eliciting evidence that Mitch became violent when drunk and by eliciting specific acts of violence committed by Mitch, he opened the door to evidence of his own violent nature. *See Oates,* 12 S.W.3d at 313; *Schlup,* 785 S.W.2d at 801. The motion court did not clearly err in finding that Movant's trial counsel was not ineffective for failing to object to the State's introduction of evidence of Movant's reputation for violence and of specific acts of violence as it would have been futile for trial counsel to continue to object. Movant's point is denied.

■ In his final point, Movant claims that the motion court clearly erred in denying his claim that his trial counsel was ineffective for failing to adequately object to the State's closing argument that stated facts that were not in evidence. He argues that the State "claimed that the evidence showed that [Movant] was a violent

person, referring to [the State's] questioning of [Movant] about alleged acts of violence. But [Movant] denied these incidents and the State presented no evidence to refute [his] testimony."

During its closing argument, the State remarked:

> Now, we heard a lot about Mitch. We heard a lot about how Mitch was a drunk, how Mitch was an alcoholic, how Mitch was mean when he got drunk, and how Mitch did violent things when he got drunk. They went to great lengths to tell you that. But remember they are brothers and I think that I showed you today also that like brothers [Movant] was much like Mitch. [Movant] had a problem with drinking. [Movant] liked to get violent when he drank. [Movant] liked to assault people when he drank, just like Mitch.
>
> Who does [Movant] assault? Who does [Movant] point guns at?
>
> BY [MOVANT'S TRIAL COUNSEL]: Your Honor, may we approach the bench?
>
> BY THE COURT: Sure.
>
> (Counsel approached the bench and the following proceedings were had:)
>
> BY [MOVANT'S TRIAL COUNSEL]: Your Honor, there's no evidence in this case that he ever pointed at anything. He asked the question, he denied it. He can't argue to the jury facts that aren't in evidence and I object to that line of argument.
>
> BY THE COURT: The Court will—the jury will recall the evidence. The objection will be overruled.
>
> (The proceedings returned to open court.)
>
> BY [THE STATE]: They talked about Mitch's family members being victims of Mitch's acts. I showed you where Mitch's family members were victims of [Movant's] acts. Do you remember what was always [Movant's] explanation up here? "It was an accident, didn't even mean it." Each and every one of those cases I've brought before you talked about him being drinking [sic] and being assaultive and causing hurt and injury and it was always not my fault. What else happened? He always relied on his family to bail him out. He always relied on [his wife] to drop the charges, that's his pattern.
>
> . . .
>
> Ladies and gentlemen, [Movant] is just like Mitch. He gets drunk, he gets assaultive, he abuses family members and he hopes they'll bail him out. Well, this time ladies and gentlemen that just won't work.

In denying Movant's claim, the motion court found:

> The scenario dictated by the facts required [Movant's trial] counsel to show [Movant] was fearful for himself, and therefore justified in pulling a gun to defend himself, and, in addition, claim there was an accidental firing of the gun, a shot not intended to hit [Mitch]. To do this counsel tried to show [Movant] was afraid of [Mitch] because of his, [Mitch's], prior bad acts. In so doing he was concerned about opening for the record the prior bad acts of [Movant]. As a result of that [Movant's trial] counsel did not object to closing arguments by the [State] that [Movant] had committed prior bad acts, acts he was asked about on cross-examination and there denied. There was no other proof of those prior bad acts adduced by the [State] (the court here does not accept [Movant's] denial of the prior bad acts).
>
> . . .
>
> . . . Trial strategy also influenced counsel's decision not to object to the [State's] closing argument. As men-

tioned, [Movant's trial] counsel is an experienced (and the court believes capable) trial attorney. The court also recalls its overall impression of [Movant's] testimony from the witness stand. His testimony was not compelling. Counsel's strategy not to object was reasonable given the evidence, the nature of the inconsistent defenses (self defense and accident), and the testimony of [Movant]. There was no prejudice to [Movant].

■ The motion court did not clearly err in denying Movant's claim. To prove ineffective assistance of counsel, a movant must overcome the presumption that counsel is competent. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. This presumption especially applies to silence in the face of allegedly improper arguments. *State v. Debler*, 856 S.W.2d 641, 652 (Mo. banc 1993). In the instant case, at the evidentiary hearing, Movant's trial counsel specifically testified that he did not persist in making additional objections because he did not want to "upset" or "alienat[e]" the jury to the detriment of his client. It has long been recognized that trial counsel will often forego an objection in order to, among other things, avoid antagonizing the jury. *See Id.* ("Counsel must, often in an instant, decide whether to object to argument, balancing the probability of a successful objection, the degree of the argument's prejudice, the possibility of a negative jury reaction to the interruption of the opponent's argument (despite instructions to the contrary), and the danger of highlighting the opponent's argument.").

■ In addition, Movant has failed to show that he was prejudiced because even if trial counsel had lodged further objections to the State's closing argument, there is no indication that they would have been granted. "During closing argument, a prosecutor is entitled to make reasonable inferences from the evidence." *State v. Clayton*, 995 S.W.2d 468, 480 (Mo. banc 1999). Further, it is proper to argue the credibility of witnesses as long as the arguments are based upon the evidence presented at trial. *State v. Clemons*, 946 S.W.2d 206, 229 (Mo. banc 1997) ("Prosecutors may also comment on the evidence and the credibility of witnesses, even to the point of belittling and or discussing the improbability of specific testimony."). Here, in light of the testimony presented at trial, it was reasonable to infer that Movant "assault[ed] people when he drank," that Movant pointed a gun at someone in his family, and that family members were the "victims of [his] acts."

Further, there is no evidence that the jury impermissibly relied on evidence that was not adduced at trial. In overruling Movant's trial counsel's objection, the trial court pointed out that the jury "will recall the evidence." The jury was also instructed that the attorneys' arguments were "not evidence," and a jury is presumed to have followed the trial court's instructions. *See State v. Madison*, 997 S.W.2d 16, 21 (Mo. banc 1999).

Because trial counsel had a reasonable trial strategy for choosing not to persist in making further objections and because further objections would have been fruitless, we find that the motion court did not clearly err in holding that trial counsel was not ineffective for failing to object to the State's closing argument. Movant's point is denied.

The judgment of the motion court is affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur.