**Brian GOUDEAU, Movant,**

v.

**STATE of Missouri, Respondent.**

No. 26204.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 7, 2005.

Mark A. Grothoff, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Kennedy, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

Brian Goudeau ("Movant") appeals from the motion court's denial of his Amended Motion to Vacate, Set Aside, or Correct Judgment and Sentence brought pursuant to Rule 29.15.[1] Movant was convicted by a jury of robbery in the first degree, a violation of section 569.020, and was sentenced to twenty years in the Missouri Department of Corrections. Movant was also charged and sentenced as a prior offender pursuant to section 558.016. Movant appealed his conviction and this Court affirmed the judgment and sentence. *See State v. Goudeau*, 85 S.W.3d 126 (Mo.App. 2002). Following an evidentiary hearing on Movant's Rule 29.15 motion, the motion court denied relief. Appellant now raises two points on appeal, discussed more fully below, based on his having received ineffective assistance of counsel.

Viewing the record in the light most favorable to conviction, *State v. King*, 865 S.W.2d 845, 846 (Mo.App.1993), it reveals that on the evening of October 18, 1999, Movant approached William Hill ("Hill"), a cashier at a Git–N–Go store in Springfield, Missouri. Movant asked Hill for "some change from the register" and when Hill told Movant he would "lose [his] job for something like that", Movant's tone of voice changed. According to Hill, Movant then pulled back his jacket to reveal a gun stuck in between his belt and his shirt.

---

1. Unless otherwise specified, all Rule references are to Missouri Court Rules (2004) and all statutory references are to RSMo 2000.

Hill gave Appellant all of the bills that were in the register, which was twenty-five to thirty dollars, and Movant left the store. Immediately after Movant left the Git–N–Go, Hill informed his co-worker, Scott Bough ("Bough"), that the store had just been robbed. Bough then went outside the store and saw Movant running up the street.[2]

Later in the day, Officer David Manteris ("Manteris") investigated a report regarding a man with a gun at a park a block away from the Git–N–Go. Manteris found Movant at the scene. When interviewed by Manteris, Movant, who was wearing different clothes than the previous evening, initially denied having any knowledge of a gun. When Manteris discovered a weapon "buried in some mulch," Movant admitted that the weapon, which turned out to be a pellet gun, belonged to him, but he denied being involved in the Git–N–Go robbery. Movant was thereafter charged as a prior offender with robbery in the first degree. As previously related, at trial he was found guilty beyond a reasonable doubt of robbery in the first degree and sentenced as a prior offender to twenty years in prison.

■ Appellate review of a motion court's ruling on a Rule 29.15 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law issued in support thereof are clearly erroneous. Rule 29.15(k); *see State v. Clay*, 975 S.W.2d 121, 140 (Mo. banc 1998). The findings of the motion court are presumptively valid. *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991). Findings and conclusions are clearly erroneous only if, after review of the entire record, we are left with a definite and firm impression that a mistake has been made. *State v.*

*Taylor*, 944 S.W.2d 925, 938 (Mo. banc 1997).

■ To prevail on a claim of ineffective assistance of counsel, Movant must establish by a preponderance of the evidence that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby. *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997); *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). If either the performance or the prejudice prong of the test is not met, then we need not consider the other, and the Movant's claim of ineffective assistance of counsel must fail. *Simmons*, 955 S.W.2d at 746. To satisfy the performance prong, Movant "must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *Id.* Prejudice exists where there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's ineffectiveness. *Id.*

■ In his first point on appeal, Movant posits the trial court's "instruction to the jury that it did not intend for the jury to come back the next day ... when combined with the hammer instruction ... coerced the jury" into bringing a guilty verdict against him. He maintains that had his counsel objected to the trial court's final directive, the outcome of his trial would have been different.

The record shows that Movant's trial was held on March 19 and 20, 2001. Following closing arguments on the morning of March 20, 2001, the jury retired to begin its deliberations at 10:24 a.m. At

---

**2.** Both Hill and Bough were later able to identify Movant in a photo lineup and at trial.

11:30 a.m., the jury submitted a request to the trial court. The jury requested the transcript of the arresting officer's testimony and three exhibits.[3] After consulting with counsel, the trial court allowed the jury to see the requested exhibits, but instructed the jury that they were to "rely upon [their] memory of the [officer's] testimony" and declined to provide them with a transcript.

 Thereafter, at 3:00 p.m., the foreperson of the jury submitted a note to the trial court which stated, "At what point or do I need to talk to the Judge concerning a strong division in the jury?" The trial court then informed counsel for both sides that he intended to read to the jury the "hammer instruction which is MAI–3d 312.10." Movant's trial counsel objected on the basis that he did not "think the jury ha[d] been out long enough" and did not know if it were "clear they're absolutely deadlocked." The trial court overruled the objection.[4]

3. The requested exhibits were, respectively, the lineup photo containing Movant's picture; the artist's sketch that was made from the descriptions given by Hill and Bough; and, the pellet gun.

4. The trial court then advised the jury in its Instruction No. 11 that:

> You should make every reasonable effort to reach a verdict, as it is desirable that there be a verdict in every case. Each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict. Do not be afraid to change your opinion if the discussion persuades you that you should. But a juror should not agree to a verdict that violates the instructions of the Court, nor should a juror agree to a verdict of guilty unless he is convinced of the defendant's guilt beyond a reasonable doubt.

MAI–CR3d 312.10.
A trial court may give the hammer instruction when it " 'deems it appropriate and when the length of deliberation or communication from

After deliberating for an additional hour, the jury submitted a third communication to the trial court at 4:25 p.m. The jury's note stated, "At what time during this evening should we expect to come back tomorrow? We have some people that may need to call their employers."

Without objection from Movant's trial counsel, the trial court sent a response to the jury at 4:40 p.m. which read, "We do not plan for you to come back tomorrow. Please continue your deliberations. We'll be glad to order dinner for you."

At 5:05 p.m., the jury returned a guilty verdict.

 "A verdict can only be considered coerced when it appears, under the totality of the circumstances, that the trial court was virtually mandating that a verdict be reached, and by implication, it would hold the jury until such occurrence." *State v. Evans*, 122 S.W.3d at 734.

the jury causes the Court to believe that the jury may be deadlocked.' " *State v. Johnson*, 948 S.W.2d 161, 164 (Mo.App.1997) (quoting MAI–CR3d 312.10, Notes on Use 2). "[T]he giving of a hammer instruction, standing alone, is generally viewed as non-coercive because it promotes open discussion, tolerance, and the desirability of a unanimous verdict while admonishing each juror against basing a verdict on evidence he or she does not believe." *State v. Evans*, 122 S.W.3d 731, 734 (Mo.App.2003). " 'A reversal is required if it is conceivable the challenged instruction or instructions coerced the jury into returning a verdict and nothing in the record is available to find otherwise.' " *Id.* (quoting *State v. Burns*, 808 S.W.2d 1, 3 (Mo.App.1991)).
We observe that the common name of the instruction as a hammer instruction "is clearly a misnomer since the term 'Hammer' connotes coercion, and the instruction has been approved by the Missouri Supreme Court as being non-coercive in its directives when used properly." *State v. Richardson*, 951 S.W.2d 718, 719 n. 2 (Mo.App.1997).

Movant maintains the present situation is akin to that found in *State v. Mason*, 588 S.W.2d 731 (Mo.App.1979), and in *State v. McNail*, 767 S.W.2d 84 (Mo.App.1989).

In *Mason*, after reading the hammer instruction to the jury, the trial court asked the jury, "Do you think if you had another fifteen minutes you might reach a verdict?" *Mason*, 588 S.W.2d at 734. "Fifteen minutes later the jury returned with a verdict...." *Id.* On appeal, the appellate court found the trial court imposed a deadline on the jury's deliberations and that the statement went " 'to the heart of the judge-jury relationship as it affects the fundamental right to a fair and impartial trial.' " *Id.* (quoting *Burroughs v. United States*, 365 F.2d 431, 434 (10th Cir.1966)). The *Mason* court found that although the hammer instruction "was properly given, the imposition of a fifteen minute time limit, and the trial court's virtual directive that a verdict be reached required reversal...." *Id.*

In *McNail*, during the course of seven hours of jury deliberations on a Saturday, the jury sent two notes to the trial court indicating a deadlock. *McNail*, 767 S.W.2d at 86. One such note stated that two jurors voting not guilty could not compromise their opinions, and the other inquired as to how long the jury would be required to deliberate before a hung jury was declared. *Id.* The court gave the hammer instruction and after an hour without a verdict, the court had the sheriff inform the jury that they would be sent to a hotel for a break and they would resume deliberations on Sunday. *Id.* The jury returned a guilty verdict ten minutes later. *Id.* at 87. The appellate court held that "[t]he totality of the circumstances here bespeak coercion" and reversed the conviction. *Id.* at 86.

In the present matter, while Movant is certainly correct that it is improper for the court to urge the jury to strive for a verdict by a certain time, the trial court in this case neither set time limits upon the jury's deliberations nor told the jury they were required to reach a verdict as in *Mason* and *McNail*. Rather, it is our view that the trial court's actions did not amount to a mandate that a verdict be reached within a certain time frame or reflect any type of coercion on the part of the trial court. This is because, first, there is no indication that the jury considered the judge's comment as a mandate to the jury that it had to render a verdict. "The trial court's comment herein did not state in unequivocal terms that the jurors must reach a verdict in the case." *Johnson*, 948 S.W.2d at 165. Second, there was nothing in the trial court's remarks to suggest that the jury could not take all of the time it needed in reaching a verdict. *See State v. Crump*, 454 S.W.2d 519, 522 (Mo.1970). Also, "[t]he tone of the dialogue in the present case does not convey a sense of pressure being put on the jury." *State v. Haymon*, 616 S.W.2d 805, 809 (Mo. banc 1981). Third, from our review of the entire record, the trial court's comments were directed more toward the trial court's own scheduling issues than toward a deadline for the jury deliberations. "[W]e note the trial court did not in any way suggest [it] would keep them there all night, tell them to hurry, or otherwise pressure the jury." *State v. Carey*, 808 S.W.2d 861, 867 (Mo.App.1991). Additionally, this Court has already determined in Movant's direct appeal that the trial court's instruction caused no manifest injustice or miscarriage of justice and did not warrant plain error relief under Rule 30.20. *See Goudeau*, 85 S.W.3d at 128–30; *see also Barnett v. State*, 99 S.W.3d 21, 24 (Mo.App.2003). Indeed, the jury was polled following the verdict, the result of which was a finding that all the jurors voted to convict Movant. *See State v.*

*Dodd,* 10 S.W.3d 546, 551–52 (Mo.App. 1999).

Accordingly, under the totality of the circumstances, the trial court did not coerce the jury into returning a verdict by its remark that the court was not contemplating returning the next day, despite its having given the hammer instruction.

■■■■■■ Additionally, we observe the motion court determined defense counsel's actions, in failing to object to the trial court's final directive, comported with reasonable trial strategy. "Counsel is afforded broad latitude as to questions of trial strategy." *State v. Hamilton,* 892 S.W.2d 774, 784 (Mo.App.1995). "A court will not find ineffective assistance where the conduct complained of by the accused involves counsel's use of reasonable discretion in a matter of trial strategy." *Id.* Trial counsel is not judged ineffective simply because in retrospect his or her decision may seem to be an error in judgment. *State v. Huggans,* 868 S.W.2d 523, 526 (Mo.App.1993). We do not require that trial counsel make non-meritorious objections. *Jameson v. State,* 125 S.W.3d 885, 891 (Mo.App.2004). "If a failure to object to a statement is based on reasonable trial strategy, then no ineffective assistance of counsel can be shown." *Chaney v. State,* 73 S.W.3d 843, 851 (Mo.App.2002). Movant bears the burden of proving his counsel's actions were prejudicial and there is a strong presumption "that counsel's failure to object was sound trial strategy." *Helmig v. State,* 42 S.W.3d 658, 679 (Mo.App.2001). Here, Movant does not meet that burden.

At the evidentiary hearing on Movant's motion, Movant's trial counsel testified that while he "should have" objected to the trial court's request that the jury "continue [its] deliberations," he did not do so because he thought "that instruction might get an outcome favorable to [Movant]." Further, he testified that he felt the jury's final note might have been an indication that the jury "couldn't reach a decision or an indication that they were not guilty, based on the fact that it had been that long that they'd been deliberating."

In our view, trial counsel's failure to object to the trial court's final directive to the jury was based on reasonable trial strategy and no ineffective assistance of counsel can be shown. *Chaney,* 73 S.W.3d at 851. Point denied.

■■■■ In his second point on appeal, Movant asserts the motion court erred in denying his post-conviction relief motion because his trial counsel was ineffective for failing to · object to the State's improper closing argument. He maintains certain statements made by the prosecutor were false and the jury considered these improper statements in reaching its verdict, thereby prejudicing Movant.

■■■■ "In arguing ineffectiveness, appellant must overcome a strong presumption that counsel's performance was sound trial strategy." *Clay,* 975 S.W.2d at 135. The standard for judging ineffective assistance for failure to object is clear:

> In many instances seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good.

*Id.* (quoting *State v. Tokar,* 918 S.W.2d 753, 768 (Mo. banc 1996)).

■■■■ "The movant must prove that a failure to object was not strategic and that the failure to object was prejudicial." *Id.* As previously set out, "[c]ounsel will not be deemed ineffective for failing to make non-meritorious objections." *Id.*

At trial, Movant's defense was that Hill and Bough had misidentified him and that

instead of being at the Git–N–Go on the evening of the robbery, he was at his sister-in-law's house. Accordingly, during closing argument, Movant's trial counsel asserted:

If Mr. Hill and Mr. Bough had seen [Movant], they would have described the scars [on his face]. They would have described the discoloration. They didn't see him. They saw somebody that looked like him. [Movant], unfortunately, ended up in that park near there. Would he have gone to that park? Would he have kept the gun, if he did the robbery? Think about that when you go back there. That doesn't make any sense. Common sense is that if he did that robbery, it's—he's not going to keep the weapon. He's not going to go back to the park some 12 hours later or near the location. He's just not going to do it.

During the State's rebuttal argument that followed, the prosecutor stated:

What about the physical evidence? The gun isn't physical evidence. Where is it found? In a park, half a block from the Git–N–Go. What do we know about the robber, [Movant]? When he left the store, which way did Mr. Bough see him going? Towards the park. What condition is the gun in when it's found by the police officers 12 hours later? Buried in the mulch. I'd submit to you that the logical inference is that [Movant] robbed the Git–N–Go, he's leaving and he's got to ditch the gun, so he ditches it and hides it in the tree. Now if you're coming back for your gun 12 hours later, you're not going to come back in the same clothes you robbed the Git–N–Go in only half a block away. And makes sense that he was in different clothes when he came back to retrieve that gun.

■■■ We note that in closing argument, the State may "make reasonable inferences from the evidence ... as long as the arguments are based upon the evidence presented at trial." *Vicory v. State,* 81 S.W.3d 725, 731 (Mo.App.2002). The State is given considerably more leeway in closing argument when the argument is retaliatory in nature. *State v. Parker,* 886 S.W.2d 908, 922 (Mo. banc 1994). "Even if the argument would otherwise be improper, a prosecutor may retaliate to an issue raised in the closing argument of Defendant." *State v. Matchett,* 69 S.W.3d 493, 500 (Mo.App.2001). "[A] conviction will be reversed for improper argument only if it is established that the comment had a decisive effect on the jury's determination." *State v. Sullivan,* 935 S.W.2d 747, 759 (Mo.App.1996). " 'There must be a reasonable probability that, in the absence of these comments, the verdict would have been different.' " *Id.* (quoting *State v. Roberts,* 838 S.W.2d 126, 132 (Mo.App.1992)). "The burden is on [Movant] to prove the decisive significance" of the State's comments. *Id.*

Movant has not persuaded this Court that the statements made by the State during closing argument were decisive in influencing the jury's verdict. The State's remarks were: (1) a retaliatory explanation of its theory of the case; (2) reasonable inferences drawn from the evidence before the jury; and, (3) not false statements. *See Vicory,* 81 S.W.3d at 731.

■■■ Additionally, Movant's counsel cannot be convicted of "ineffective assistance where the conduct complained of by the accused involves counsel's use of reasonable discretion in a matter of trial strategy." *Hamilton,* 892 S.W.2d at 784. "It is only the exceptional case where a court will hold a strategic choice unsound." *Id.*

■■■ At the evidentiary hearing in this matter, Movant's trial counsel explained

that he failed to object to the State's rebuttal argument because "an obvious objection causes the Prosecutor to" further explain the situation and "draw[s] attention to that whole issue. I mean, that could have been explained by the State, if I had objected."

Here, Movant's counsel was exercising reasonable trial strategy in not objecting to the State's closing argument. *Clay,* 975 S.W.2d at 135. Point Two is denied.

The judgment of the motion court is affirmed.

SHRUM, J., and BATES, C.J., concur.