**Keith S. LEBBING, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 27929.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 16, 2008.

Mark A. Grothoff, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant Keith S. Lebbing ("Movant") appeals the motion court's denial following an evidentiary hearing of his Rule 29.15 motion.[1] Movant asserts four points of motion court error. We affirm the findings of fact and conclusions of law of the motion court.

The record reveals Movant was charged by Amended Information as a prior offender per section 558.016, with one count of statutory sodomy in the first degree, a violation of section 566.062, and one count of statutory rape in the first degree, a violation of section 566.032.

A jury trial was held on December 10, 2001. The following evidence was adduced at trial.[2] Victim was born on January 16, 1987, and has lived with her mother ("Mother"), since that time. When Victim was approximately seven years old she was raped by her older brother, and he was

1. All Rule references are to Missouri Court Rules (2007) and all statutory references are to RSMo 2000.

2. In this opinion we shall recite only those facts necessary to discuss Movant's postconviction claims. For a full recitation of the facts relating to the underlying charges against Movant, see *State v. Lebbing*, 114 S.W.3d 877 (Mo.App.2003), in which Movant's underlying convictions were affirmed on direct appeal to this Court.

subsequently sent to prison for his actions. A Sexual Assault Forensics Exam ("SAFE exam") was performed on Victim at that time by Dr. Samuel Brayfield ("Dr. Brayfield") which revealed "a bump and a notch ... in the posterior part of the hymen ...," but that her hymen was otherwise intact.

Several years later, when Victim was approximately eleven years old and living in Kansas City, Missouri, Mother met Movant and married him within a matter of weeks. Victim testified that on the day Mother married Movant "he was giving [her] hickeys" in the family's home. Victim also testified that while they were living in Kansas City Movant had "sexual intercourse with [her]" on at least three occasions. During one of these occasions, Mother was sleeping in the bed when Movant "put his thing inside" of Victim's vagina.

In February of 2000, the family moved to Rolla, Missouri. Victim testified that Movant had been cheating on Mother and their relationship "wasn't too good." On April 9, 2000, Movant took Victim to the Hampton Inn in Rolla. He checked into a room and rented two pornographic movies. He had Victim take her clothes off and he told her to "give him a blow job." Victim complied and "put [her] mouth on his thing." Victim testified Movant then had sexual intercourse with her and ejaculated on her stomach.

The record also reveals that on April 11, 2000, Movant went to Victim's middle school and checked her out of school by telling school officials there had been a death in the family. There had not been a death in the family; instead, Movant took Victim to a friend's house where he had sexual intercourse with her.

Victim also testified that while they were living in the Huffman Trailer Court in Rolla, Missouri, Movant came into her room at night "a few times" and slept in her bed with her. He would have sexual intercourse with her and force her to "put [her] mouth on his thing." Victim related that one time when Mother was outside and Victim was using the bathroom, Movant came into the bathroom and told her "[t]o bend over." She stated he "tried sticking [his penis] in [her] butt, and that hurt, and [she] was trying to scream and squirming, then he took it out and put it back in [her] private parts." He then had sexual intercourse with her. She also testified that she and Movant took baths together and when they would get out of the tub to dry off "he would have [her] bend over and he would stick his thing in [her] private parts." Victim related that on one occasion she and Mother were playing tic-tac-toe on Movant's stomach as he was lying on his back on the bed. During the game, Movant stated that "whoever won would give him a blow job." Victim won the game and Movant "turned to [her] and he said that [she] had to give him a blow job." Victim related she did not want to, but "he pushed [her] head down there" and her mouth touched "[h]is thing."

Victim testified she was frightened of Movant and did not disclose his abuse of her because he had threatened to "blow up the whole trailer court with [her] and [Mother] in it." She stated Movant often threatened her after having sexual intercourse with her and she believed him because she once saw him choke Mother. Victim related she told Mother about the abuse only after she was sure Movant was gone from their lives. Mother took Victim to the police; subsequently an SAFE exam was performed on Victim by Dr. Lisa Riojas ("Dr. Riojas") on June 6, 2000. Dr. Riojas testified at trial that Victim seemed depressed; she also related she knew about the prior abuse of Victim by her older brother. Dr. Riojas testified Vic-

tim's "hymenal tissue was essentially gone" and that "[t]here were little pieces of it, what we call remnant, something akin to what you see in a woman that had had sex for years, or had children before...." Dr. Riojas testified Victim's injuries were consistent with the history of abuse she had related to Dr. Riojas and consistent with repeated "recurrent trauma" to the vaginal area.

Movant did not testify at trial. Mother testified for the defense and stated she had sent a letter to Movant in jail in which she apologized for turning him in to the authorities.

At the close of all the evidence, the jury found Movant guilty of the crimes charged in the Amended Information. Movant was sentenced as a prior offender to fifty years in prison on each count with the sentences to run consecutive to each count.

Movant filed his *pro se* Rule 29.15 motion on December 29, 2003. He was appointed counsel and an Amended Motion to Vacate, Set Aside or Correct Sentence and Judgment was filed on March 22, 2004.

A hearing on Movant's motion was held on September 21, 2005. The motion court denied Movant's request for Rule 29.15 postconviction relief. This appeal by Movant followed.

Appellate review of a motion court's ruling on a Rule 29.15 motion for postconviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law issued in support thereof are clearly erroneous. Rule 29.15(k); *see Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). The findings of the motion court are presumptively valid. *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991); *see Glass v. State*, 227 S.W.3d 463, 468 (Mo. banc 2007). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the appellate

court is left with the definite impression that a mistake has been made." *State v. Taylor*, 944 S.W.2d 925, 938 (Mo. banc 1997).

To prevail on a claim of ineffective assistance of counsel, Movant must establish by a preponderance of the evidence that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby. *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997); *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). To satisfy the performance prong, Movant "must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *Simmons*, 955 S.W.2d at 746. Prejudice exists where there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's ineffectiveness. *Id.* If either the performance or the prejudice prong of the test is not met, then we need not consider the other, and Movant's claim of ineffective assistance of counsel must fail. *Id.*

In his first point relied on Movant asserts the motion court clearly erred in denying his request for postconviction relief because his trial counsel was incompetent for "failing to introduce prior inconsistent statements of [Dr. Riojas] from her pretrial deposition that she could not tell if sexual activity had occurred recently or five or six years before...." He maintains that such testimony "contradicted her trial testimony that the sexual abuse had occurred in the three years prior to her examination." Movant asserts the "inconsistent" testimony "would have cast doubt on Dr. Riojas's credibility and would have supplied additional factual evidence to be

considered by the jury that substantially expands the window of opportunity during which [Victim's] injuries could have developed." Movant maintains if such testimony would have been introduced, "a reasonable probability exists that the result of [Movant's] trial would have been different."

In a March 2, 2001, deposition taken of Dr. Riojas prior to trial, Dr. Riojas testified "[t]here's no way to know ..." "when [the] sexual activity occurred" and she stated she "couldn't tell if the sexual activity was recent or if it happened ... five or six years ago."

As previously related, Dr. Riojas testified at trial that she had performed a SAFE exam on Victim in June of 2000. She also testified she understood the family had moved to Rolla in the spring of 2000 and Victim told her she had been repeatedly sexually abused for a period of about two years. She related Victim told her about being raped by D.L.; however, Dr. Riojas felt the trauma she saw was consistent with more recent abuse due to the lack of scarring. Dr. Riojas testified that the abuse "would have occurred over the previous few years." On cross-examination, Dr. Riojas testified that it was hard to pinpoint the specific time of abuse, but she believed it had occurred "sometime in the previous three years ... and it probably took that many years to get to that point."

At the evidentiary hearing on Movant's Rule 29.15 motion, Movant's trial counsel, Keith Gibson ("Defense Counsel"), testified that he had been present at Dr. Rajas's deposition in March of 2001 as well as during her testimony at trial. He acknowledged that Dr. Riojas testified in her deposition that she could not pinpoint the time frame of the abuse and that the doctor had testified at trial that the abuse had occurred in the last several years. De-

fense Counsel related that the reason he did not attempt to impeach Dr. Riojas's credibility on the issue was that Dr. Riojas told him prior to trial that since the time of her deposition she had read Dr. Brayfield's previous SAFE exam results from the incident involving D.L. Having reviewed Dr. Brayfield's findings from 1995, Dr. Riojas then informed Defense Counsel "she was ... very absolutely certain ... that [the abuse] occurred since Dr. Brayfield's [SAFE] exam." She also told Defense Counsel that based on the aforementioned report she would be testifying that the time frame for abuse was definitely within the last three years. Defense Counsel related he did not "want to open the door to expert opinion too much with [Dr. Riojas]." He stated that if he "tried to impeach her trial testimony with regard to the ... time frame ..." it would have opened the door for her to testify that based on the changes in Victim's genitalia between the time of the first SAFE exam by Dr. Brayfield in 1995 and the SAFE exam she had recently performed, the abuse definitely occurred during the time period Victim was in Movant's presence.

Further, Defense Counsel also related Dr. Riojas had "a very bubbly personality" and "[s]he would describe what most people would consider very horrific facts ... in such a manner ... that did not emulate how tragic these facts were...." He stated he "didn't want to get into a heated discussion with her for fear of changing her demeanor into something more serious." Defense Counsel also testified he felt it could hurt his client if Dr. Riojas changed her "tone" because he felt her "bubbly" demeanor "lessened the impact of this crime on the jury."

 It has long been held that "the mere failure to impeach a witness does not automatically entitle a movant to [postconviction] relief." *Londagin v. State*, 141

S.W.3d 114, 119 (Mo.App.2004). "A movant must establish the impeachment would have provided a defense or changed the outcome of the trial." *Id.* "This [C]ourt presumes that counsel acted professionally in making decisions and that any challenged action was a part of counsel's sound trial strategy." *Glass,* 227 S.W.3d at 468. Here, had Defense Counsel asked Dr. Riojas about her deposition testimony it is our view that it would not have provided a defense or changed the outcome of the trial. *Londagin,* 141 S.W.3d at 119. Indeed, it may very well have had the opposite effect by more precisely pinning down the period of time that Victim suffered abuse by Movant's actions. Accordingly, we cannot conclude that the impeachment of Dr. Riojas by her prior deposition testimony would have aided Movant's case; indeed it could have harmed Movant's case. "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Anderson v. State,* 196 S.W.3d 28, 33 (Mo. banc 2006). Defense Counsel's failure to impeach Dr. Riojas was reasonable trial strategy. Point One is denied.

In his second point relied on Movant asserts the motion court erred in denying his Rule 29.15 motion because his trial counsel "failed to act as a reasonably competent attorney ... by failing to object to an improper argument made by the prosecutor that improperly shifted the burden of proof to [Movant]."

At trial, during Movant's closing argument, Defense Counsel argued: "The only thing we knew that happened was that [Victim] had a lot of sex. With who, we don't know. I made sure you heard from [Victim's mother,] the only eyewitness to this alleged crime."

In rebuttal closing argument, the State argued the following:

The question of who is responsible for [Victim's] physical appearance of her genitalia. Okay. You know how it looked when [her older brother] was done with her. You know how it looked right after [Movant] was out of her life. Was there any evidence ever presented that there was someone else in the picture that did this? No. [Victim] told you that she had no sexual contact with anyone other than [her older brother], and that ended in [19]94, and [Movant]. And that's it. She told the same thing to Dr. Riojas also, which is completely consistent. There was no one else, and there was no evidence presented to you that would lead you to believe that there was someone else responsible for this behavior, for these findings. And that's because there was no one. It was [Movant].

At the motion hearing, Defense Counsel testified that "based on the context" of the argument, he did "not believe that [the State] shifted the burden during [its] argument to [Movant]." He stated he felt the State "was ... arguing on a reasonable inference of the evidence based on [Victim's] testimony, that there was no one ever presented ... there was no other person that sexually abused [Victim] that she testified to other than [D.L.] and [Movant]." He also related the State

did not specifically say did [Movant] present any, did the defense present anyone else to you. No. [The State argued] there [wa]s ... no evidence ... presented otherwise and [the State] referred to two of the witnesses that [it] called on the stand and based on that I did not feel [the State] had shifted the burden and based on that I did not object. If [the State] would have said that [Movant] didn't present any evidence of anyone else being responsible for this I would have objected because

that clearly would have shifted the burden. The way I took [the] argument to be was a reasonable inference of the evidence that was presented during trial.

Defense Counsel then related he had "made a legal call" based on the context of the State's argument and decided it did not attempt to shift the burden of proof to Movant.

■ An attorney's failure to object during closing arguments only results in ineffective assistance of counsel if it prejudices the accused and deprives him of a fair trial. *State v. Clemons,* 946 S.W.2d 206, 228 (Mo. banc 1997).

■ "The State may refer to a defendant's failure to offer evidence, so long as there is no reference to the defendant's failure to testify." *State v. Phillips,* 940 S.W.2d 512, 519 (Mo. banc 1997) (internal citation omitted). "Prosecutors are entitled to argue matters supported by the evidence or matters reasonably inferable from the record, and may point out to the jury an absence of evidence to support a theory suggested by the defendant." *State v. Chaney,* 967 S.W.2d 47, 56 (Mo. banc 1998). "References to 'the Defendant's lack of corroborating evidence are not prohibited and do not constitute improper shifting of the burden of proof.'" *Id.* (quoting *State v. Macon,* 845 S.W.2d 695, 696 (Mo.App.1993)).

■ At trial, the State presented evidence that Victim was sexually abused by two different people. Victim testified she was abused by D.L. in 1994, and Movant, beginning in the year 2000. She testified she had not been abused by anyone else and had no other sexual contact with anyone else. The State's comments were simply a way of saying there was no evidence presented to the jury that Victim was abused by anyone other than Movant, which is a reasonable inference from this evidence. Further, the State's comments were made in rebuttal to Defense Counsel's statement in closing argument that Victim had had a "lot of sex," but "[w]ith who, we don't know." The State's argument that Movant was the only person who could have been abusing Victim is clearly "pointing out to the jury an absence of evidence to support a theory suggested by the defendant." *State v. Mease,* 842 S.W.2d 98, 110 (Mo. banc 1992). As such, the State's closing argument did not improperly shift the burden of proof to Movant. Furthermore, Defense Counsel is not required to make non-meritorious objections and cannot be found to be ineffective "'for failing to make [such] objections.'" *Worthington v. State,* 166 S.W.3d 566, 581 (Mo. banc 2005) (quoting *State v. Holloway,* 877 S.W.2d 692, 697 (Mo.App. 1994)). Defense Counsel was not ineffective for failing to challenge the State's statements during closing argument. Point Two is denied.

In his third point of motion court error Movant maintains Defense Counsel was ineffective "by failing to object to the [S]tate's improper closing argument in which the prosecutor commented on [Movant's] failure to present evidence that had been specifically excluded by the [trial] court."

Prior to trial, on November 20, 2001, Movant filed a motion to admit certain evidence of Victim's prior sexual contact pursuant to exceptions set out in section 491.015, the so-called "rape shield" statute. In the motion, Movant stated he "intend[d] to introduce evidence regarding the fact that [in August of 1998] Victim . . . visited the emergency room because she sat on a lipstick cap which became lodged in her vagina."

A pre-trial hearing was held on the matter on November 21, 2001, at which time

the trial court ruled the evidence was "not coming in under 491[.015]," but that if Movant could prove the relevance of the evidence "during the course of the trial" then Movant "could make an offer and address it at that time."

At trial, during Dr. Riojas's testimony, Defense Counsel made an offer of proof relating to the incident with the lipstick cap. During the offer of proof Dr. Riojas testified she did not remember being told specifically about the lipstick cap, but that Victim had informed her "about some incident involving a bathtub or some type of object that was in the bathtub around that time that got lodged in her vagina...." Dr. Riojas stated Victim told her "about [the] episode, and [Dr. Riojas] kind of made the decision in [her] mind that it was not relative or relevant or pertinent to the situation."

Dr. Riojas also recounted that "it didn't amount to any significant injury, any bleeding ... that kind of a thing that [people] worry about, any kind of ... [l]ong lasting injury." She went on to state that the injuries she observed in Victim were from the "repetitive entry of something into the vagina" and that the object inserted would have had to have been "rigid." Dr. Riojas opined that the object would have had to have been "something of significant diameter," "more than one finger" and "at least two to three fingers." She stated that such destruction of the hymen would have had to have been done with "a lot of force" and she did not believe Victim could have inflicted that kind of damage by masturbating, because she "would be surprised if someone could do that to themselves." Regarding the lipstick cap, she stated "it's not unusual ... to see little girls get objects in their vagina temporarily or things like that," but she felt that Victim's physical condition

could not have been caused by such an incident.

The trial court ruled "in light of the witness'[s] testimony, [it] [did not] see the relevance" of the evidence and denied Movant's offer of proof.

In rebuttal closing argument, the State argued the following:

Was there any evidence ever presented that there was someone else in the picture that did this? No.
* * *

There was no one else, and there was no evidence presented to you that would lead you to believe that there was someone else responsible for this behavior, for these findings.

At the motion hearing, Defense Counsel testified he filed a motion to admit the evidence relating to the lipstick cap, argued the motion at the hearing, and made an offer of proof at trial on this issue. He stated "the primary purpose of the evidence" "was a means of showing that this kid ... had just got out of the shower, went to sit on a bed and that this lipstick cap ... had become [ ]lodged in her genitalia when she sat on it." He stated he "found this story to be somewhat incredible, basically, [he] did not believe the story was believable and that was the primary purpose for that." He stated had the evidence been permitted he "would have basically used it to attack [Victim's] credibility" and "argued that basically ... [Victim is] lying." He also related that he would have alternatively argued Victim "was masturbating with the device" when it became lodged in her vagina. Defense Counsel observed, however, that there were problems with this theory because he "was never able to pinpoint the exact size of the cap or anything to that effect" and the only lipstick caps he could locate were only "a half inch in diameter." Defense Counsel also testified he asked Victim

about this matter in her deposition and she drew him a picture of the object.[3] He related that based on her description "and based on [his] understanding of the female genitalia that that particular object was probably not severe, not large enough to cause damage to the hymen...." Regardless, he testified that he would have made the masturbation argument had the evidence been permitted by the trial court.

Defense Counsel also testified at the motion hearing that he had not objected to the State's closing argument because he did not believe it to be a comment "on objected to evidence." He stated the State's closing argument was that there was no evidence anyone other than Movant caused these injuries to VICTIM and that saliently, he had no "true evidence to point to any particular individual" or object that could have caused the injuries to Victim. Again, " '[i]f a failure to object to a statement is based on reasonable trial strategy, then *no ineffective assistance of counsel can be shown*,' " *Goudeau v. State*, 152 S.W.3d 411, 418 (Mo.App.2005) (quoting *Chaney*, 73 S.W.3d at 851).

■ This Court fails to see how the previously mentioned recitals by the State could realistically be construed as a comment on Movant's "failure to present evidence that had been specifically excluded by the [trial] court." Furthermore, there was no evidence by either side that a third-party abused Victim or that she had had sexual intercourse with anyone other than Movant during the time period at issue. Movant had no evidence to present that there was anyone else who could have caused the injuries to Victim. It is well settled that the State "may point out to the jury an absence of evidence to support a

theory suggested by the defendant." *Chaney*, 967 S.W.2d at 56. Furthermore, the probative value of the vague evidence relating to the incident with the lipstick cap was lessened in light of Dr. Riojas's testimony about the condition of Victim's vagina. If anything, Dr. Riojas's offer of proof tended to show that the lipstick cap *could not* have caused the injuries to Victim, Defense Counsel was not required to make non-meritorious objections. *See Goudeau*, 152 S.W.3d at 418. Defense Counsel was not ineffective for failing to object to the State's closing argument. Point Three is denied.

■ In his fourth and last point relied on Movant maintains his appellate counsel was ineffective in "failing to assert on direct appeal that the trial court had erred in not allowing [Movant] to present evidence regarding an incident in 1998 in which [Victim] had to be taken to the emergency room to remove a foreign object from her vagina." He asserts this evidence "would have established an alternative source of [Victim's] injuries, was more probative than prejudicial and thus legally relevant ..." and "a reasonable probability exists that the appellate court would have reversed [Movant's] convictions."

This issue was not raised in his amended Rule 29.15 motion filed with the motion court. He is, therefore, procedurally barred from raising these claims of error here. *Barnett v. State*, 103 S.W.3d 765, 773 (Mo. banc 2003); Rule 29.15(d). This Court does not have " 'jurisdiction to consider an issue not raised before the motion court.' " *State v. Evans*, 992 S.W.2d 275, 296 (Mo.App.1999) (quoting *State v. Mul-*

---

**3.** Victim related at her deposition that she got out of the shower, "just sat down [on the bed] and [the candy lipstick lid] just kind of went inside" her vagina. She stated she went to the hospital and had it removed. She stated it hurt when "they pulled [it] out" but she did not remember bleeding.

*lins,* 897 S.W.2d 229, 231 (Mo.App.1995)). Consequently, Movant's fourth point relied on will not be considered. Point denied.

The findings of fact and conclusions of law of the motion court are affirmed.

LYNCH, C.J., and RAHMEYER, J., concur.